UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAY CAVANAUGH,

        Plaintiff,

v.

UAW INTERNATIONAL UNION, ET AL.,

        Defendants.

_____/

Case No. 15-13223

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT [9]**

    Plaintiff Gay Cavanaugh, an employee at Ford Motor Company, was placed on medical leave in November 2004. Plaintiff contacted Ford about returning to her position in the Clerk's Department upon the expiration of her medical leave in January 2006, but to no avail. After Ms. Cavanaugh returned to work in January 2007, Defendant UAW Local No. 228 filed a grievance on her behalf, challenging Ford's inability to place Ms. Cavanaugh in a position consistent with her medical restrictions. UAW Local No. 228 investigated Plaintiff's allegations by meeting with supervisors at Ford and extensively reviewing documents. After determining that there was no evidence to support Plaintiff's complaints, Local No. 228 withdrew the grievance in September 2012.

    Plaintiff filed this lawsuit on September 11, 2015, alleging that UAW Local No. 228 and Co-Defendant UAW International breached their duty to fairly

represent her. According to Plaintiff, Defendants failed to obtain her authorization before withdrawing the grievance; failed to communicate with her while the grievance was processed; wrongfully withdrew the grievance; acted arbitrarily and/or in bad faith; and failed to adequately administer and/or adjudicate her dispute with Ford.

Plaintiff's submissions to the Court are muddled and confusing. According to the complaint, Plaintiff brings this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*. However, in her Response to Defendants' Motion, Plaintiff for the first time states that she brings her claims pursuant to Section 9 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159 *et seq*. In other portions of her Response, Plaintiff proceeds as though Section 301 governs her claims. The Court will address this discrepancy in more detail later in this Opinion.

The Court has considered the parties' submissions and finds the motion suitable for determination without oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated below, the Court will **GRANT** the Motion to Dismiss/Motion for Summary Judgment as to both defendants. Plaintiff consents to dismissal of her claims as to Defendant UAW International. The Court will also dismiss Plaintiff's claims as to Defendant UAW Local 228 because she has failed to allege that the union acted in a hostile or discriminatory manner; that the union

exercised its discretion in bad faith; or that the union engaged in arbitrary conduct. *See Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 76 (1991).

## FACTUAL BACKGROUND

Plaintiff Gay Cavanaugh has been a Ford Motor Company employee[1] in the Clerk's Department at the axle plant in Sterling, Michigan since 1996. While working at Ford, Plaintiff has been a member of a bargaining unit represented by UAW Local 228. The terms and conditions of her employment are governed by several collective bargaining agreements between Ford and the UAW, including the 2003 Master Agreement (Dkt 9-2, Ex. A, Pg. ID 94), which establishes the grievance procedures at issue in this case.

### I. Plaintiff's attempts to return to work after medical leave and the filing of the 2007 grievance.

Ford placed Plaintiff on medical leave in November 2004. Her leave expired in January 2006. Throughout 2006, Plaintiff attempted to return to work under physician-imposed restrictions, including sedentary work with a sit/stand option and constraints on her use of heavy machinery. (Dkt. 16-1, Ex. A, Pg. ID 584-97). However, Ford consistently informed Plaintiff that no work was available within her job classification. *Id.* In January 2007, Plaintiff returned to the position at which she worked prior to her medical leave. According to Plaintiff, this position

---

[1] Although it does not affect the Court's analysis, it is unclear whether Plaintiff remains employed by Ford.

was available in 2006 – while she continuously sought employment – and it was consistent with her medical restrictions. Plaintiff was compensated while on leave, but did not receive overtime pay, seniority, or time toward her pension. As part of her efforts to reenter the work force, Plaintiff requested assistance from several different union representatives, including Jerry Payne, Gary Martin, Donnie Marshall, and Jeff Terry.

As a result of Ford's failure to reinstate Plaintiff in January 2006, UAW Local 228 District Committeeman Ken Gaffa filed grievance #CC-312933 on Plaintiff's behalf on March 22, 2007 (Dkt. 16-1, Pg. ID 599). The basis of Plaintiff's grievance was that Ford transferred employee Marla Woodford to a vacant position in the Clerk's Department rather than recalling Plaintiff to this position.

Article VII of the Master Agreement governs Local No. 228's grievance protocols. The Agreement provides, in relevant part:

> [T]he Union shall, in the redress of alleged violations by the Company of this Agreement . . . be the exclusive representative of the interests of each employee or group of employees covered by this Agreement, and only the Union shall have the right to assert and press against the Company any claim, proceeding or action asserting a violation of this agreement.

(Dkt. 9-2, Ex. A, pg. 44-45).

The Master Agreement also gives the union the power to withdraw a grievance or appeal a grievance, even absent the employee's consent. *Id.* at pg. 48, 51 ("The Unit Committee shall have power to withdraw a . . . grievance . . .").

The grievance procedure begins with oral discussions among the employee, the UAW District Committeeperson, and the employee's supervisor at Ford. In the event that the grievance is not resolved at that point, the Committeeperson may appeal to Stage 2. Assuming oral discussion is unsuccessful, the written grievance is submitted to the company at a Unit Grievance Meeting. The company has one week to issue a written decision on all grievances considered at the Grievance Meeting. *Id.* at 45-47.

The Chairperson of the Unit Committee may refer the grievance to Stage 3 if she considers it to be well-founded. The company is given notice of the third stage grievance, and both parties must exchange a complete and detailed statement of the facts and circumstances surrounding the grievance. If the grievance contains a claim for discrimination, the Bargaining Chairperson may refer the grievance to the Chairperson of the Civil Rights Committee of the Local Union for investigation. *Id.* at 48-49.

Pursuant to step 1 of the Article VII grievance process, Gaffa met with Plaintiff and a Ford supervisor for an initial oral discussion. They were unable to resolve the grievance at this time.

## II. Neil Wallyn's involvement with Plaintiff's grievance.

Gaffa appealed to the second step of the procedure on March 23, 2007, and referred Plaintiff's grievance to Plant Committeeman Neil Wallyn. Wallyn was then handling approximately 300 other active grievances within the bargaining unit at the Plant. (Dkt. 9-2 at Pg. ID 85-86).

Wallyn reviewed the step 1 record, all applicable contracts between the UAW and Ford, and met with Plaintiff. After examining Article VIII, Section 30 of the Master Agreement,[2] Wallyn could not identify any specific contractual provision requiring Ford to immediately recall Plaintiff from medical leave irrespective of ability and seniority. Additionally, Wallyn did not find any evidence of the following:

1) that there was work available within Plaintiff's restrictions;
2) that her seniority entitled her to such a position;
3) Ford transferred Marla Woodford – or any other employee – to a vacant position rather than reinstating Plaintiff.

Ford denied the grievance at the second step and Wallyn appealed to a step 2.5 meeting.

---

[2] The relevant language in the Master Agreement states as follows: "at the expiration of [an approved medical leave of absence], an employee will be returned to work which the employee can perform in accordance with the employee's seniority . . ." (Dkt. 9-2, Ex. A, Pg. 90).

Because Plaintiff was employed when her grievance was filed,[3] UAW and Ford did not give her grievance priority. Defendant maintains, however, that Wallyn constantly updated Plaintiff about the status of her grievance. (Dkt. 9-2, Pg. ID 86) ("Over the next few years, I routinely spoke to Ms. Cavanaugh during working hours about the status of this grievance . . .").

Plaintiff took a second medical leave of absence in April 2008 and did not return to Ford until May 2010. Although Wallyn was elected the Plant Chairman of the bargaining unit in June 2010, he continued to handle Plaintiff's grievance.

In March 2011, Wallyn met with Christine Baker, Ford's Labor Supervisor, to discuss several active step 2.5 grievances, one of which was Plaintiff's 2007 grievance. During this meeting, Wallyn and Baker reviewed several documents, including Plaintiff's and Woodford's personnel records. Woodford's records indicated that she was transferred to a vacant position in the Clerk's Department in October 2005. Woodford's only transfer occurred three months before Plaintiff was due to return from her medical leave. (Dkt. 9-2, Pg. ID 86-87). Wallyn also learned that Woodford's transfer was done in accordance with the "Non-Promotional Transfer Agreement," a provision in the Master Agreement that gives employees the right to apply for a transfer to jobs considered non-promotional

---

[3] Defendant notes that Plaintiff's grievance was not prioritized because "[i]t has been a practice of the parties to hear all grievances in order from the date filed, unless the grievance relates to a discharge or otherwise loss of employment." (Dkt. 9-2, Pg. ID 85).

within their classification in a different department. *Id.* When a vacancy arises, Ford offers the position to the applicant with the highest seniority. Of the employees who applied for the transfer to the Clerk's Department, Baker explained, Woodford had the highest seniority. *Id.* at Pg. ID 88. The Master Agreement also gives Ford the right to transfer employees to other classifications within the employees' seniority group. Woodford worked in the clerical seniority group at the time of her transfer to the Clerk's Department, and therefore, Ford had the right to transfer her. Baker also stated that Woodford had six more years' seniority than Plaintiff.

After meeting with Baker, Wallyn asked that the grievance be placed on hold while he investigated further. *Id.* Although the step 2.5 meeting was adjourned to a later date, Wallyn continued negotiating with Ford. It is Defendant's position that Ford did not consider any settlement terms that included a payment of money damages to Plaintiff.

The step 2.5 meeting continued on September 11, 2012. Baker maintained that Ford did not violate any provision of the Master Agreement when it refused to recall Plaintiff from her medical leave until January 2007. *Id.* at Pg. ID 89. She also said that there were no vacancies in the Clerk's Department or throughout the Plant during the period between January 2006 and January 2007.

Defendant contends that Wallyn had nothing to dispute Ford's evidence demonstrating that Woodford's transfer occurred when Plaintiff was ineligible to return to work. Wallyn also had no evidence that Ford could have accommodated Plaintiff's medical needs in a position that became vacant after her medical leave in January 2006, or that Plaintiff had the requisite seniority to fill this position. *Id.* This, coupled with the fact that Plaintiff earned disability benefits during the claimed backpay period that offset any claimed damages, lead Wallyn to believe that Plaintiff's grievance lacked merit to proceed to stage 3. After meeting with Baker, Wallyn withdrew Plaintiff's grievance and made a record of this decision on the Second Step Grievance Record. *Id.* at Pg. ID 289. Defendant asserts that Wallyn notified Plaintiff of his decision during the week following the September 11, 2012 step 2.5 meeting. *Id.* at Pg. ID 90. He also states that it would have been very easy for Plaintiff to learn about the status of her grievance, as all Local 228 representative had access to the file in the union's office at the Plant. *Id.* at Pg. ID 92 (if any of the union representatives contacted by Plaintiff "needed an update on any grievance filed within the bargaining unit, [they] could have spoken to [Wallyn] directly or make arrangements to review the grievance files that were kept in an office at the Plant.").

### III. Plaintiff's suspension and the 2013 grievance

On April 23, 2013, Ford suspended Plaintiff without pay for 30 days, claiming that she violated the zero tolerance workplace violence policy by using derogatory language and threatening a coworker. (Dkt. 10-1, Pg. ID 363). Defendant Local 228 filed a grievance on Plaintiff's behalf on April 28, 2013, arguing that the suspension was without just cause. Plant Committeeman Sam Vultaggio, Neil Wallyn's successor, handled Plaintiff's grievance. The grievance settled at a step 3 hearing on May 5, 2015, and Ford paid Plaintiff 80 hours of lost wages. *Id.* Defendant states that Plaintiff never asked about the status of her 2007 grievance, nor did she complain to Vultaggio about Wallyn. *Id.* at Pg. ID 364.

### IV. Internal Union Appeal Process, as set forth by the UAW Constitution, and the grievance reinstatement process.

The UAW Constitution gives UAW members "the right . . . to appeal any action, decision, or penalty" of, among others, the International Union and the Local Union. (Dkt. 10-2, Pg. ID 411-12). The Constitution requires aggrieved members "to exhaust fully [their] remed[ies] and all appeals under this Constitution and the rules of this Union before going to a civil court of government agency for redress." *Id.* at Pg. ID 416.

To initiate the appellate process, an aggrieved member must first appeal "to the membership or delegate body immediately responsible for the official, officer, action or decision under challenge." *Id.* at Pg. ID 412. A member who is

dissatisfied with the result at this step may then appeal to the International Executive Board (IEB), at which point an evidentiary hearing usually occurs. The union member can then appeal to the Convention Appeals Committee (CAC) or Public Review Board (PRB). The IEB, CAC, or PRB can order the UAW to pay money damages to an aggrieved member or order the processing of a grievance that was wrongly disposed of. The member has the right to representation of counsel at all appearances before the IEB, CAC, and PRB. *Id.* at Pg. ID 416.

Defendant notes that Plaintiff never appealed Local 228's decision to withdraw the 2007 grievance. *Id.* at Pg. ID 368. Plaintiff also failed to utilize the grievance reinstatement procedure, through which she could have requested that her grievance be reinstituted. (Dkt. 9-2, Ex. I, Pg. ID 358) ("[I]n those instances where the UAW's International Executive Board, Public Review Board, or Constitutional Convention Appeals Committee have reviewed a grievance disposition and found that such disposition was improperly concluded by the Union body or representative involved, the National Ford Department may so inform the Labor Relations Staff . . . and request . . . that such grievance be reinstituted . . .").

## LEGAL STANDARD

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Rule 56. On a Rule

12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On a Rule 56 motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

Defendant Local 228 sets forth the following arguments as to why the Court should grant its motion dismiss to dismiss/motion for summary judgment:

1) Plaintiff failed to exhaust internal UAW appeals;
2) Plaintiff's Section 301 action is time barred;
3) Plaintiff fails to state a Section 301 claim for breach of the duty of fair representation;
4) Local 228 did not breach its duty to fairly represent Plaintiff while handling her 2007 grievance; and
5) Ford did not breach the collective bargaining agreement by failing to reinstate Plaintiff in January 2006.

As mentioned previously, Plaintiff asserts in her Response that she brings her claims against Defendants pursuant to Section 9 of the NLRA, rather than Section 301 of the LMRA.[4] Defendants argue that Plaintiff is precluded from raising her Section 9 claim at this stage because she failed to allege it in her complaint, and furthermore, that she cannot "dress[] up [the] hybrid Section 301 action . . . as a separate cause of action" under Section 9 of the NLRA. *Glasstetter v. International Union*, No. 16-11412, 2016 U.S. Dist. LEXIS 134775, at *16 (E.D. Mich. Sept. 29,

---

[4] The complaint states: "jurisdiction of this Court is founded . . . on Section 301 of the Labor Management Relations Act." (Dkt. 1, Pg. ID 2). However, in her Response to Defendants' Motion, Plaintiff states that in fact, "she has filed an action under Section 9 of the National Labor Relations Act, 29 U.S.C. § 159 *et seq*." (Dkt. 16, Pg. ID 570).

2016) (Cleland, J.). The Court will briefly summarize the differences between a Section 301 LMRA claim and a Section 9 NLRA claim.

A plaintiff-employee's hybrid Section 301 action "comprises two causes of action." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). "The first is a suit against the employer for breach of the collective bargaining agreement; the second is a suit against the union for breach of its duty of fair representation." *Kosa v. Int'l UAW*, 143 F. Supp. 3d 592, 601 (E.D. Mich. 2015) (Duggan, J.). A plaintiff-employee "may . . . sue one defendant and not the other; but the case he must prove is the same whether he sues [the union, the employer] or both." *DelCostello*, 462 U.S. at 165. In other words, for a plaintiff to succeed "in a Section 301 action against the union *or* the employer, the plaintiff must show that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation." *Pratt v. UAW, Local 1435*, 939 F.2d 385, 388 (6th Cir. 1991) (citing *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987)). "Unless [the plaintiff] demonstrates *both* violations, he cannot succeed against either party." *Bagsby*, 820 F.2d at 801.

A claim brought under Section 9(a) of the NLRA is distinct from a Section 301 claim, and stands alone. *See Kosa*, 143 F. Supp. 3d at 602 (where the plaintiffs alleged a hybrid § 301 claim and an independent § 9(a) claim, "the viability of Plaintiffs' separate duty of fair representation [§ 9(a)] claim against UAW is not

affected by the Court's resolution of the hybrid § 301 claim."). The duty of fair representation created by § 9(a) "flows from the union's statutory position as exclusive representative and exists both before and after the execution of [a collective bargaining] agreement [with the employer]." *Storey v. Local 327*, 759 F.2d 517, 523 (6th Cir. 1985). The union's duty to fairly represent its members, therefore, "does not depend on the existence of a collective bargaining agreement." *Pratt*, 939 F.2d at 388. Indeed, "[s]ection 9a, in conjunction with 28 U.S.C. § 1337, creates a jurisdictional basis for actions for breach of the duty of fair representation *independent* of Section 301." *Pratt*, 939 F.2d at 388 (emphasis added).

The test to determine the correct cause of action as set forth by the Sixth Circuit is as follows: "if a plaintiff's complaint state[s] a 'colorable claim' under the collective bargaining agreement, it must be construed as a Section 301 claim rather than a Section 9(a) claim." *Pratt*, 939 F.2d at 389 (citing *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555 (6th Cir. 1990)). This reasoning is consistent with the Supreme Court's opinion in *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, which provides:

> While in *Vaca* [*v. Sipes*, 386 U.S. 171 (1967)] an allegation that the union had breached its duty of fair representation was a necessary component of the § 301 claim against the employer, *the converse is not true here: a suit against the union need not be accompanied by an allegation that an employer breached the contract, since whatever the employer's liability, the employee would still retain a legal claim against the union.*

493 U.S. 67, 82-83 (1989) (emphasis added).

The Court will characterize Plaintiff's claim as one derived from § 9(a) of the NLRA. Plaintiff Cavanaugh "perhaps realizing [s]he has no claim against [Ford] under the collective bargaining agreement, alleges claims based upon independent breaches of duty on the part of the union." *Pratt*, 939 F.2d at 390. "[I]n such circumstances, a plaintiff need not state a claim under Section 301 to state a claim under Section 9(a)." *Id*. Contrary to Defendants' assertions, Plaintiff's claims are best construed as being brought under Section 9 rather than Section 301. Plaintiff has not alleged any breach of the collective bargaining agreement by Ford, nor did she name Ford as a defendant. Because the crux of Plaintiff's complaint pertains to the union's alleged arbitrary and perfunctory handling of her grievance, the complaint does not present a "quintessential hybrid 301 claim." *Id.* at 389.

### A. Plaintiff's Claim for Breach of the Duty of Fair Representation is Time Barred.

"Regardless of whether this is a hybrid action or an action solely for breach of the duty of fair representation, this case is governed by a statute of limitations of six months." *Barker v. Int'l UAW*, No. 14-12997, 2014 U.S. Dist. LEXIS 169931, at *5-6 (E.D. Mich. Dec. 9, 2014) (Edmunds, J.). "[T]he limitations period begins to run when the potential plaintiffs know or should have known of the union's alleged breach of its duty of fair representation." *Ratkosky v. United Transp. Union*, 842 F.2d 869, 873 (6th Cir. 1988).

According to Plaintiff, May 19, 2015 is the date on which she learned that her 2007 grievance had been withdrawn.[5] She points to September 11, 2015, the date on which she filed her complaint, to show that she brought this action within the six month statute of limitations. Defendant contends that Plaintiff's claim began to accrue in September 2012 when Wallyn first told her that he withdrew the 2007 grievance.

Plaintiff's argument fails. The record indicates that Plaintiff knew, or should have known, about the status of her 2007 grievance on July 24, 2009, when she filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), the basis of which was Defendant's allegedly poor handling of the 2007 grievance.[6] S*ee Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir. 1988) (the plaintiffs knew of the union's intention when they "filed an unfair labor practice charge with the NLRB against the union . . . alleging a breach of the duty of fair representation. Plaintiffs' own actions thus establish that they, too, interpreted [the union representative's] letter as a final decision by the union not to pursue their claims."); *Gustafson v. Cornelius Co.*, 724 F.2d 75, 77 (8th Cir. 1983) (the filing of

---

[5] This is the date on which Plaintiff's attorney allegedly received correspondence from UAW Local 228 President Paul Torrente. It appears that President Torrente informed Plaintiff's attorney that the grievance was withdrawn in September 2012. (Dkt. 16-1, Pg. ID 623).

[6] The NLRB charge states: "During the past 28 months, and continuing to the present day, [Defendant has] acted in bad faith by failing and refusing to pursue a grievance contesting the Employer's failure to recall me from no work available in violation of contract." (Dkt. 9-2, Ex. H, Pg. ID 355).

the unfair labor practice charge over the same conduct that later gave rise to a § 301 complaint as evidence that the plaintiff knew the union would no longer pursue his grievance).

It is clear that Plaintiff either knew the status of her 2007 grievance, or at least took serious issue with Defendant's handling of her grievance (and therefore should have known of the grievance's status), by July 24, 2009, and accordingly, should have filed this action by January 24, 2010, seven years ago. Furthermore, even assuming that Plaintiff first learned about the withdrawal of her grievance in May 2015, her claims are still time-barred. Plaintiff's allegations against Defendant include its failure to obtain her authorization before withdrawing the grievance; failure to communicate with her while the grievance was processed; wrongful withdrawal of the grievance; arbitrary and/or bad faith conduct; and failure to adequately administer and/or adjudicate her dispute with Ford. Such conduct "occurred longer than six months before the filing of this case" in September 2015. Therefore, "Plaintiff[] cannot rely on any of it to establish a breach of the duty of fair representation." *Barker*, 2014 U.S. Dist. LEXIS 169931, at *7.

### B. Plaintiff Fails to State a Claim for Breach of the Duty of Fair Representation.

Section 9(a) directs unions to "serve the interests of all members without hostility or discrimination toward any[;] exercise its discretion with complete good

faith and honesty[;] and avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A union acts arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Nida v. Plant Protection Ass'n Nat'l*, 7 F.3d 522, 526 (6th Cir. 1993) (quoting *O'Neill*, 499 U.S. at 67). "[A]n unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Walk v. P.I.E. Nationwide*, 958 F.2d 1323, 1326 (6th Cir. 1992). A union's judgment are not arbitrary "even if those judgments are ultimately wrong," negligent, or mistaken. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998); *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983). Additionally, to prove discrimination or bad faith by a union, Plaintiff must show "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964). In examining a union's performance and determining whether it has breached its duty, the Court must be highly deferential. *See O'Neill*, 499 U.S. at 78.

Plaintiff has not alleged any facts to substantiate her claim that UAW Local 228 acted in an arbitrary or discriminatory way, or that it acted in bad faith. The fact that Wallyn did not respond to her emails is not indicative of hostility or arbitrariness. *See Wilson v. International Broth. of Teamsters*, 83 F.3d 747, 753 (6th Cir. 1996) (the union representative's handling of the grievance "while

perhaps less than vigorous," was not considered hostile where he merely responded to plaintiff in a perfunctory manner); *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1109 (6th Cir. 1989) ("Even assuming a delay [in notifying plaintiff about the withdrawal of the grievance] occurred, that fact alone does not constitute a material breach in Local [228]'s duty of fair representation."). Moreover, Plaintiff identifies no facts in support of the claim that Local 228 exhibited reckless disregard, gross negligence, or animus toward her. *See Caryer v. International UAW*, No. 92-7201, 1997 U.S. Dist. LEXIS 15565, at *35-36 (N.D. Ohio, Feb. 24, 1997). Finally, Plaintiff cannot plausibly complain about Defendant's conduct when the Master Agreement gives Local 228 the right to withdraw the grievance without Plaintiff's consent. (Dkt. 9-2, Ex. A, pg. 51). Plaintiff has not succeeded at the formidable task of proving bad faith by the UAW as it pertains to the handling of her grievance.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment [9] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated:  February 2, 2017                Senior United States District Judge